Paul Batista
*Attorney-at-Law*
Paul Batista, P.C.
26 Broadway – Suite 1900
New York, New York 10004
(917) 397-1815
(631) 377-0111

Benoit Le Bars
*Attorney-at-Law*
*lebars@l-lb.com*

Michael McNutt
*Of Counsel*
*mcnutt@l-lb.com*

Lazareff Le Bars Sarl
10 place Vendome
Paris, France 75001

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x

JOHN LEOPOLDO FIORILLA,

                         Plaintiff,

           v.

CITIGROUP INC.; CITIBANK, N.A.; CITIGROUP
GLOBAL MARKETS HOLDINGS INC.;
CITIGROUP GLOBAL MARKETS INC.; CITICORP
LLC; EDWARD JAMES MULCAHY; PAUL,
WEISS, RIFKIND, WHARTON & GARRISON LLP;
GERARD E. HARPER; AUDRA J. SOLOWAY;
BRESSLER AMERY & ROSS, P.C.; and ALLEN &
OVERY LLP,

                         Defendants.

---------------------------------------------------------------- x

22 Civ. _____

**COMPLAINT UNDER THE
RACKETEER INFLUENCED
AND CORRUPT
ORGANIZATIONS ACT
AND FOR OTHER RELIEF**

**JURY TRIAL DEMANDED**

Plaintiff John Leopoldo Fiorilla, individually and as Trustee FBO John Leopoldo

Trust U/A/D/6-25-2003 (the "Trust"), as and for his Complaint alleges as follows:

## Table of Contents

Page

Introduction and Summary ....................................................................................................... 1

Parties and Relevant Non-Parties............................................................................................. 3

   A.  The Plaintiff............................................................................................................3

   B.  The Defendants.......................................................................................................3

       (i)    Citigroup Inc. ............................................................................................ 3

       (ii)   Citibank, N.A. .......................................................................................... 3

       (iii)  Citigroup Global Markets Holdings Inc. ................................................. 4

       (iv)  Citigroup Global Markets Inc. ................................................................. 4

       (v)   Citicorp LLC............................................................................................. 4

       (vi)  Edward James Mulcahy ........................................................................... 5

       (vii)  Paul, Weiss, Rifkind, Wharton & Garrison LLP .................................... 5

       (viii) Gerard E. Harper...................................................................................... 5

       (ix)  Audra J. Soloway ..................................................................................... 5

       (x)   Bressler Amery & Ross, P.C. .................................................................. 6

       (xi)  Allen & Overy LLP ................................................................................. 6

   C.  Relevant Non-Parties..............................................................................................6

       (i)    Klayman & Toskes, P.A. ......................................................................... 6

       (ii)   Lawrence L. Klayman .............................................................................. 6

Jurisdiction and Venue.............................................................................................................. 6

Statement of Facts Common to All Counts ............................................................................... 7

   A.  General Background..............................................................................................7

B.   The FINRA Arbitration .......................................................................................................7

    (i)      Pre-Hearing Settlement Discussions......................................................... 8

    (ii)     Defendants' First Motion to Dismiss the Arbitration ............................. 8

    (iii)    The Hearings of the FINRA Panel............................................................ 9

    (iv)     Defendants' Second Motion to Dismiss the Arbitration......................... 9

    (v)      The FINRA Award .................................................................................. 10

C.   Post-Award Litigation .....................................................................................................10

D.   The First French Proceeding to Recognize the FINRA Award........................................12

E.   Plaintiff's CPLR 5015 Motion and CGMI's Motion for Anti-Suit and
    Anti-Enforcement Injunctions.........................................................................................14

F.   Defendants' Motion for Sanctions...................................................................................15

G.   Post-Award Litigation in Federal Court ..........................................................................15

H.   The Second French Proceeding to Recognize the FINRA Award ...................................16

I.   CGMI's Motion for Contempt in the New York Supreme Court ....................................18

J.   The RICO Conspiracy ......................................................................................................18

    (i)      Object....................................................................................................... 18

    (ii)     Manner and Means ................................................................................. 20

K.   Predicate Acts..................................................................................................................21

    (i)      Harper's False Testimony Before the State Supreme Court.................... 21

    (ii)     False and Misleading Representations Before the State and
         Federal Courts Regarding the Alleged Settlement ................................. 21

L.   Allen & Overy .................................................................................................................27

M.   Citigroup and CGMI........................................................................................................28

N.   Paul Weiss's Intimidation Tactics ...................................................................................28

**Page**

(i)    State Sanctions Motion ...................................................................................... 28

(ii)    Intimidation of Plaintiff's Counsel Robert de By ............................................... 28

(iii)    Intimidation of Plaintiff's Counsel Eric Jaso ..................................................... 28

(iv)    Intimidation of Plaintiff's Counsel Bernard Kleinman ....................................... 29

Overview of the Application of RICO ........................................................................................ 29

Claims for Relief ......................................................................................................................... 30

Count I (Violations of RICO, 18 U.S.C. § 1962(c)) .................................................................. 30

A.    The Elements of a Section 1962(c) Violation ........................................................... 30

B.    The Enterprise .......................................................................................................... 31

C.    The Conduct ............................................................................................................. 31

D.    The Pattern of Racketeering Activity ....................................................................... 33

(1)    Obstruction of Justice in Violation of 18 U.S.C. § 1503 .............................. 33

(2)    False Declarations in Violation of 18 U.S.C. § 1623 .................................... 34

(3)    Honest Services Fraud in Violation of 18 U.S.C. § 1346 .............................. 34

(4)    Deceit on the Court in Violation of New York Judiciary Law § 487 ...................................................................................................... 34

(5)    Extortion in Violation of New York Penal Law ............................................. 36

(6)    Mail Fraud and Wire Fraud in Violation of 18 U.S.C. §§ 1341, 1343 ...................................................................................................... 37

(7)    Money Laundering in Violation of 18 U.S.C. § 1956(a)(2)(A) .................... 38

(8)    Conspiracy against Civil Rights in Violation of 18 U.S.C. § 241 ................ 39

(9)    Use of Interstate and Foreign Commerce in Violation of the Travel Act ............................................................................................... 39

Count II (Violations of RICO, 18 U.S.C. § 1962(d)) ................................................................ 40

**Page**

  (i)  State Sanctions Motion ......................................................................... 28

  (ii)  Intimidation of Plaintiff's Counsel Robert de By .............................................. 28

  (iii)  Intimidation of Plaintiff's Counsel Eric Jaso....................................... 29

  (iv)  Intimidation of Plaintiff's Counsel Bernard Kleinman ....................................... 29

Overview of the Application of RICO ..................................................................... 29

Claims for Relief ...................................................................................... 31

**Count I** (Violations of RICO, 18 U.S.C. § 1962(c)) ............................................... 31

  A. The Elements of a Section 1962(c) Violation ........................................... 31

  B. The Enterprise ................................................................................... 31

  C. The Conduct ................................................................................... 32

  D. The Pattern of Racketeering Activity ..................................................... 34

    (1)  Obstruction of Justice in Violation of 18 U.S.C. § 1503 ............................ 34

    (2)  False Declarations in Violation of 18 U.S.C. § 1623 ................................... 34

    (3)  Honest Services Fraud in Violation of 18 U.S.C. § 1346............................. 35

    (4)  Deceit on the Court in Violation of New York Judiciary Law
       § 487 ..................................................................................... 35

    (5)  Extortion in Violation of New York Penal Law ........................................... 36

    (6)  Mail Fraud and Wire Fraud in Violation of 18 U.S.C. §§ 1341,
       1343 ..................................................................................... 37

    (7)  Money Laundering in Violation of 18 U.S C. § 1956(a)(2)(A .................... 39

    (8)  Conspiracy against Civil Rights in Violation of 18 U.S.C. § 241 ........... 40

    (9)  Use of Interstate and Foreign Commerce in Violation of the
       Travel Act ................................................................................... 40

    (10) Violations of 18 U.S.C. §1512..………………...…………………………..41

**Page**

**Count II** (Violations of RICO, 18 U.S.C. § 1962(d)) ............................................................. 41

**Count III** (Fraud) .......................................................................................................................... 42

**Count IV** (Violations of New York Judiciary Law § 487) .................................................... 43

**Count V** (Civil Conspiracy) ...................................................................................................... 44

**Count VI** (Unjust Enrichment) ................................................................................................. 45

PRAYER FOR RELIEF ................................................................................................................... 45

**Introduction and Summary**

1.      This action arises from the massive fraud perpetrated by defendants
Citigroup Inc., Citibank, N.A., Citigroup Global Markets Holdings Inc., Citicorp Global Markets
Inc., Citicorp LLC, Edward James Mulcahy, Paul, Weiss, Rifkind, Wharton & Garrison LLP,
Gerard E. Harper, Audra J. Soloway, Bressler Amery & Ross, P.C., and Allen & Overy LLP,
together with the non-party persons, entities and conspirators identified in this Complaint, as a
result of their participation in the conduct of an enterprise under the Racketeer Influenced and
Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.*, through a pattern of racketeering
activity involving obstruction of justice, wire fraud, mail fraud, intimidation and other criminal
acts.

2.      In fact, this action presents a stunning case of collective criminal conduct
by defendants and their conspirators to steal from plaintiff a July 30, 2013, arbitration award to
plaintiff by the Financial Industry Regulatory Authority ("FINRA") of $15,745,543 against the
corporate Citibank-related defendants and $366,175 against defendant Edward James Mulcahy
(collectively, the "FINRA Award").

3.      Through the extraordinary commission of multiple acts of mail fraud, wire
fraud, obstruction of justice and other criminal RICO predicate acts, defendants and their
conspirators have prevented plaintiff Fiorilla during approximately a decade of defendants'
brazenly corrupt scheme from collecting even one dime of the valid FINRA Award, which, as of
the time of filing of this Complaint, now aggregates, given the interest to which plaintiff is entitled,
approximately $33,906,102, before trebling to approximately $101,718,486.

4.      As described later in this Complaint, defendants knowingly and willfully,
among other things, made materially false and corrupt representations before the courts in the State

of New York, the United States District Court for the Southern District of New York, the United States Court of Appeals for the Second Circuit, as well as before the courts of the Republic of France, so as to obstruct, influence and impede the respective proceedings of those courts.

5.      By utilizing fabricated and false information in multiple courts in the United States to evade enforcement of the FINRA Award, defendants and their conspirators unlawfully prevented and obstructed plaintiff from the recognition and enforcement of the FINRA Award in the United States.

6.      Moreover, as an element of their scheme illegally to obstruct the enforcement of the FINRA Award in the United States, defendants intimidated and harassed, and continue to intimidate and harass, the plaintiff from his legitimate efforts to obtain recognition and enforcement of the FINRA Award in France and the European Union. As in the United States, defendants engaged and continue to engage in their campaign of fraud, extortion, and obstruction of justice by implementing in France tactics of intimidation, falsehoods and harassment to impede plaintiff Fiorilla from enforcing the FINRA Award in that nation and the European Union.

7.      More specifically, while plaintiff was legitimately seeking enforcement of the FINRA Award in France, defendants and their conspirators escalated their efforts in the United States to punish and intimidate through extortionate acts directed at Fiorilla by assisting one another to obtain (i) a baseless anti-suit injunction in the United States and (ii) an abusive disciplinary order and an order for costs against plaintiff.

8.      The Trustee applied in France for recognition and enforcement of the award by moving for an *exequatur* from the appropriate French courts, as depicted later in this Complaint.

9.      In response to plaintiff's thoroughly legitimate efforts to pursue his effort to collect the FINRA Award in France, defendants and their conspirators further increased their

pressure and intimidation by applying for an order of contempt in the United States, including a finding of criminal contempt.

10.     As delineated later in this Complaint, defendants and their conspirators, in their malicious pursuit of plaintiff, have directly caused plaintiff many millions of dollars in damages in violation of RICO. Defendants' conduct has also infused extortionate fear against Fiorilla, who has dual citizenship in the United States and Italy, to relocate outside of the United States to fulfill his obligations as Trustee to enforce the FINRA Award outside the United States.

**Parties and Relevant Non-Parties**

*A.     The Plaintiff*

11.     Plaintiff Fiorilla, individually and as Trustee of the Trust, is a citizen of the United States and a citizen of the Republic of Italy and of the European Union.

*B.     The Defendants*

  *(i)     Citigroup Inc.*

12.     Defendant Citigroup Inc. ("Citigroup") is a Delaware corporation registered with the Secretary of State of New York with its principal place of business at 388 Greenwich Street, New York, New York.

  *(ii)     Citibank, N.A.*

13.     Defendant Citibank, N.A. ("Citibank") is a national banking association (Charter No. 1461) formed under the laws of the United States and is authorized to transact the business of banking.

(iii)    *Citigroup Global Markets Holdings Inc.*

14.    Defendant Citigroup Global Markets Holdings Inc. ("CGMHI") is a New York corporation with its principal place of business at 388 Greenwich Street, New York, New York.

(iv)    *Citigroup Global Markets Inc.*

15.    Defendant Citigroup Global Markets Inc. ("CGMI") is a New York corporation which is a member of – and regulated by – FINRA with a principal place of business at 388 Greenwich Street, New York, New York.

(v)    *Citicorp LLC*

16.    Defendant Citicorp LLC ("Citicorp") is a Delaware corporation with a principal place of business at 388 Greenwich Street, New York, New York.

17.    Defendant Citicorp is an adjudicated federal felon. In May 2015 – even as certain of the events at issue in this litigation were taking place – Citicorp entered into a plea agreement with the United States under which Citicorp, together with its affiliates including the named Citicorp entities identified in this Complaint, was convicted of violations of the Sherman Antitrust Act, 15 U.S.C. §1, and required "to pay to the United States a criminal fine of $925 million . . ." *See* Plea Agreement dated May 20, 2015.

18.    Defendant Citicorp is affiliated with and under common control with defendants Citigroup, Citibank, CGMHI, and CGMI, among other Citicorp-related entities, which under the Plea Agreement are also adjudicated felons.

19.    Upon information and belief, Citicorp and its affiliated entities have, between 2001 to the present, been the named defendants and respondents in more than 100 litigations and civil enforcement proceedings brought in many instances by federal and state

4

regulatory authorities. Collectively, the Citicorp entities and their multiple affiliates have conducted themselves as a massive crime wave whose conduct has adversely damaged immense numbers of the defendants' customers, clients, and investors, including plaintiff Fiorilla.

20.     Moreover, Citicorp and the other "Citi" entities to which this Complaint refers have abused the laws applicable to corporations and other types of entities, and have illicitly fabricated an opaque, self-serving structure designed to mislead the public and the Courts as to liability and to divert the fair administration of justice.

(vi)     *Edward James Mulcahy*

21.     Defendant Edward James Mulcahy (FINRA Central Registration Depository no. 1033488) ("Mulcahy") at all relevant times was the branch manager of the branch in which plaintiff's account was held and managed. Mulcahy was a respondent in the proceedings before FINRA and FINRA included substantial specific damages against Mulcahy in favor of the Trust as a result of his illegal conduct.

(vii)    *Paul, Weiss, Rifkind, Wharton & Garrison LLP*

22.     Defendant Paul, Weiss, Rifkind, Wharton & Garrison LLP ("Paul Weiss") is a New York Registered Limited Liability Partnership with a principal place of business at 1285 Avenue of the Americas, New York, New York.

(viii)   *Gerard E. Harper*

23.     Defendant Gerard E. Harper ("Harper") is an attorney admitted to practice in New York and at all times relevant to this Complaint a partner of defendant Paul Weiss.

(ix)     *Audra J. Soloway*

24.     Defendant Audra J. Soloway ("Soloway") is an attorney admitted to practice in New York and at all relevant times was a partner of Paul Weiss.

5

(x)     *Bressler Amery & Ross, P.C.*

25.     Defendant Bressler Amery & Ross, P.C. ("Bressler Amery") is a New Jersey Professional Corporation registered in the State of New York as a Foreign Professional Corporation with a principal place of business at 17 State Street, 34th Floor, New York, New York.

(xi)     *Allen & Overy LLP*

26.     Defendant Allen & Overy LLP ("Allen & Overy") is a United Kingdom Limited Liability Partnership registered in New York State as a Foreign Registered Limited Liability Partnership with an office for the transaction of business in New York City at 1221 Avenue of the Americas and which regularly engages in business in New York.

C.     *Relevant Non-Parties*

(i)     *Klayman & Toskes, P.A.*

27.     Non-party Klayman & Toskes, P.A. ("Klayman & Toskes") is a Florida Professional Association which is engaged in the practice of law at 380 Lexington Avenue, 17th Floor, New York, New York.

(ii)     *Lawrence L. Klayman*

28.     Non-party Lawrence L. Klayman ("Klayman") is an attorney admitted to practice in the State of Florida and at all times relevant to this Complaint was a partner at Klayman & Toskes.

## Jurisdiction and Venue

29.     This Court has subject matter jurisdiction under 18 U.S.C. § 1964(c) with respect to the claims arising under RICO.

30.     This Court in addition has jurisdiction under 28 U.S.C. §§ 1331 and 1332 with respect to diversity of citizenship and the fact that the amount in controversy exceeds $75,000, exclusive of interest and costs.

31.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) and under 18 U.S.C. § 1965.

**Statement of Facts Common to All Counts**

A.     *General Background*

32.     In 2006, plaintiff retained defendant CGMI to manage a trust fund worth approximately $20 million.

33.     Through gross mismanagement and malfeasance as ultimately determined by FINRA, defendant CGMI, by September 2008, eviscerated the funds, resulting in the value of the Trust's funds to fall to only $20,000.

B.     *The FINRA Arbitration*

34.     Because of the staggering losses, plaintiff invoked CGMI's account-opening documents containing an arbitration clause requiring mandatory arbitration of any dispute (the "FINRA Arbitration").

35.     In connection with the commencement of the FINRA Arbitration in August 2010, plaintiff and CGMI each executed a valid and uncontested "FINRA Arbitration Submission Agreement" (the "FINRA Agreement") expressly agreeing to submit the matter in controversy and all related disputes to arbitration.

36.     The FINRA Agreement explicitly required the parties to be "bound by [FINRA's] procedures and rules" and to "abide by and perform any award[s] rendered." The agreement also provided that any court of competent jurisdiction could enforce the award.

(i)      *Pre-Hearing Settlement Discussions*

37.      In April 2012, shortly before the first scheduled hearing date in the FINRA Arbitration, tentative and privileged settlement discussions were held in which Citicorp, CGMI and related Citicorp entities, through their attorneys, and plaintiff, through his counsel—non-parties Klayman & Toskes, Klayman, and representatives of Klayman & Toskes—participated.

38.      Crucially, the settlement discussions never resulted in a binding settlement agreement. Although tentative settlement terms were discussed on a privileged basis, there was no binding agreement on any material terms and there was no execution of a comprehensive written settlement agreement as required by FINRA arbitration rules and procedures.

39.      On May 9, 2012, plaintiff notified FINRA in writing that no settlement had been reached and that plaintiff's claims should proceed to arbitration hearings for resolution.

40.      Plaintiff's notification to FINRA was based, in part, on the failure of the Citibank representatives and plaintiff during the settlement discussions to reach agreement on material terms and the fact that no written settlement agreement of any type was executed by the parties.

(ii)     *Defendants' First Motion to Dismiss the Arbitration*

41.      In a blatant and unethical misuse of process, defendant CGMI, acting through defendant Bressler Amery, made a written application (the "First Motion to Dismiss") to the arbitral panel (the "FINRA Panel") to enforce a purported, *and utterly imaginary*, settlement agreement.

42.      The FINRA Panel denied in full defendants' First Motion to Dismiss, determining that no settlement agreement had been reached and that the Citicorp arguments were frivolous.

(iii)    *The Hearings of the FINRA Panel*

43.    Hearings in the FINRA Arbitration began in October 2012.

44.    The FINRA Panel conducted hearings periodically from October 2, 2012 through July 27, 2013, including four pre-hearing sessions and twenty-three evidentiary hearing sessions.

(iv)    *Defendants' Second Motion to Dismiss the Arbitration*

45.    In yet another patently frivolous motion, defendants, through defendant Bressler Amery, its attorneys in the arbitration proceedings, filed a written motion in February 2013 (the "Second Motion to Dismiss") while the hearings were underway seeking to terminate the arbitration on the ground of the purported – *indeed, the non-existent* – settlement agreement.

46.    The FINRA Panel again denied as frivolous the Second Motion to Dismiss, just as it had denied the abusive First Motion to Dismiss.  As was the case in connection with the First Motion to Dismiss, the Citicorp defendants and Bressler Amery brazenly ignored (A) the fact that FINRA Rule 12504 states that "[t]he panel cannot act upon a motion to dismiss . . . unless the panel determines that: (A) the non-moving party previously released the claim[s] in dispute by a signed settlement agreement and/or written release. . . .;" (B) the fact that defendants knew or should have known that they were estopped from claiming the alleged—and fictional—settlement agreement because CGMI and its counsel had failed to appeal the prior determination of the FINRA Panel denying the First Motion to Dismiss; and (C) defendants and their counsel had voluntarily participated in the FINRA Arbitration hearings without objection and without ever moving for a judicial stay of the arbitration pursuant to New York Civil Practice Law and Rules 7503(b).

(v)    *The FINRA Award*

47.    On July 30, 2013, the FINRA Panel awarded the plaintiff $10,750,000 plus pre-award interest running from May 1, 2009, for a total of $15,745,543 against the Citicorp defendants and $250,000 against Mulcahy, plus pre-award interest running from May 1, 2009, for a total of $366,175.

C.    *Post-Award Litigation*

48.    After the FINRA Award, the Citicorp defendants replaced Bressler Amery with defendant Paul Weiss and its attorneys, including defendants Harper and Soloway, among many other Paul Weiss partners and associates, in an abusive, "no holds barred," scorched earth effort to nullify the FINRA Award.

49.    Faced with implacable rejections by the FINRA Panel of their position that there had been a settlement and knowing that an appeal to a state or Federal court would be precluded by the Federal Arbitration Act and the terms of the FINRA Agreement, the Citicorp defendants and Paul Weiss devised a thoroughly corrupt scheme to obstruct, influence and impede the judicial proceedings through a series of criminal acts.

50.    More specifically, on August 28, 2013, the Citicorp defendants, acting primarily through defendants Paul Weiss, Harper and Soloway, filed a petition to vacate the FINRA Award (the "Vacatur Proceeding") in the New York Supreme Court, New York County (the "New York Supreme Court") (*Citigroup Global Markets, Inc. v. Fiorilla*, 653017/2013).

51.    The Vacatur Proceeding provided the defendants with the illicit foundation for their criminal scheme to frustrate enforcement of the FINRA Award in the United States and later outside of the United States, specifically in France.

52.     The following issues were material in the Vacatur Proceeding:

(A)     Whether the parties "settled" the case in all material respects and reported the purported settlement to FINRA; and

(B)     Whether a Florida "court" had conclusively adjudicated the settlement issue and resolved that the parties had reached a settlement, but the FINRA Panel, according to defendants, ignored that settlement and proceeded with the arbitration.

53.     Defendants, in a systematic and pervasive scheme of lies, focused on fabricating material false and fraudulent misrepresentations:

(i)     The matter had been settled in all material aspects prior to the FINRA Award even though the Citi defendants had never paid a dime of the fictive "settlement"; and

(ii)    There had been a "decision" by a Florida court determining substantively and definitively that the case had been settled.

54.     Based solely on the defendants' misrepresentations and lies, Justice Charles E. Ramos of the Commercial Division of the New York Supreme Court vacated the FINRA Award. Specifically, at a December 17, 2013 hearing, defendant Harper falsely misrepresented the nature of a prior proceeding to the Court:

THE COURT:  Was there an adjudication in the Florida Court?
MR. HARPER:  Yes.
THE COURT:  And that was?
MR. HARPER:  That the case had been settled.
THE COURT:  The petition is granted in all respects.  Thank you very much.  The decision is on the record.  Take your appeal.  Don't waste my time with this.
[*See* Transcript, Hearing before Justice Ramos, December 17, 2013, page 2.]

55.     Again, based on defendants' pattern of false declarations and filings, the New York Appellate Division, First Department (the "Appellate Division"), affirmed the lower court's decision (*Citigroup Global Markets Inc. v. Fiorilla*, 127 A.D.3d 491 (1st Dep't 2015), and leave to appeal was denied by the New York Court of Appeals (the "Court of Appeals") (26 N.Y.3d 908 (2015)).

56.     The decisions of Justice Ramos, of the Appellate Division and of the Court of Appeals were based on blatant lies for which defendants, including Paul Weiss, Harper and Soloway, were responsible.

D.     *The First French Proceeding to Recognize the FINRA Award*

57.     After the initial proceedings in the New York Supreme Court, Fiorilla, a dual citizen of the United States and the European Union, successfully brought an application pursuant to French law and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention") to confirm the FINRA Award before the Tribunal de Grande Instance de Paris (the "TGI de Paris") (the "First French Proceeding").

58.     Both the United States and France are parties to the New York Convention.

59.     In March 2016, the TGI de Paris "recognized and enforced the award," based on French law and the New York Convention (*Tribunal de Grande Instance de Paris, Ordonnance d'Exequatur*, March 30, 2016, Dépôt N°16/01143—the "First French Exequatur").

60.     Based on this recognition of the enforceability of the FINRA Award under French law, various conservatory measures and seizures involving the corporate defendants' assets were initiated by a French bailiff in September 2016 with banks and financial institutions in France. Because of the malicious intervention of defendants, no assets of the defendants were seized and the FINRA Award remained unpaid.

61.     Defendants CGMI and Mulcahy appealed the First French Exequatur according to a declaration delivered to the clerk's office of the Paris Court of Appeal on September 29, 2016, registered under number RG 16/18976. Under French court procedures, the substantive appeal was required to be submitted on January 21, 2017 by CGMI and Mulcahy.

62.     At the same time and in a profoundly corrupt manner, during the appeal of the First French Exequatur to recognize and enforce the FINRA Award in France, defendants and Mulcahy returned to the New York courts to seek a groundless and punitive injunction from a court in New York to prohibit Fiorilla from taking any action to enforce or recover the debt covered by the award.  This was a flagrant and false effort to evade a decision of the French court. Defendants intentionally failed to properly inform the New York Courts that controlling French law provided for the vesting of the right of recognition and enforcement of the FINRA Award to occur on the date of the FINRA Award and irrespective of any other court order in any other jurisdiction rejecting recognition of the FINRA Award, including the United States Court decisions related to the Vacatur Proceeding described earlier in this Complaint.

63.     Based on the fraudulence of defendants' tactics, on January 18, 2017, a judge in the United States issued an injunction ordering Fiorilla to cease all enforcement actions of the FINRA Award, including to cease the defense against the appeal of the granted First French Exequatur ("US anti-enforcement order").

64.     By pleadings served electronically on February 13, 2017, Fiorilla, under the extreme coercion of a United States injunction and the extortionate fear inflicted on Fiorilla by Paul Weiss and other defendants, asked the Court of Appeals in Paris to "take note" of his waiver of the benefit of the First French Exequatur issued on March 30, 2016.

65.     In his request with respect to the March 30, 2016 order, Fiorilla specifically stressed that he renounced the benefit of the order but did not renounce the benefit of his fundamental right to enforce the FINRA Award. In effect, Fiorilla requested that his partial renunciation was designed to preserve to Fiorilla the opportunity to overturn the injunction in the United States and re-assert his right in France to enforce the FINRA Award in full.

66.     In a decision dated May 30, 2017, the Paris Court of Appeals acknowledged plaintiff's "irrevocable renunciation of the benefit of the order dated 30 March 2016, by which the president of the Paris Tribunal de Grande Instance granted exequatur to the disputed award."

67.     Consequently, the First French Exequatur was withdrawn without prejudice to Fiorilla's renewed application for an exequatur at a later date to enforce the FINRA Award.

E.      *Plaintiff's CPLR 5015 Motion and CGMI's Motion for Anti-Suit and Anti-Enforcement Injunctions*

68.     Plaintiff Fiorilla brought a motion under CPLR 5015 in the New York Supreme Court to vacate the prior vacatur judgment (the "Rule 5015 Proceeding").

69.     The Citicorp defendants opposed the Rule 5015 Proceeding and at the same time moved for a world-wide anti-suit and anti-enforcement injunction as to the FINRA Award's enforcement and to require the plaintiff to renounce entirely his rights to the already-issued First French Judgment.

70.     Again, based on the defendants' false declarations and filings, Justice Ramos (i) denied plaintiff's Rule 5015 Proceeding, which was designed to vacate the prior vacatur, and (ii) granted the Citicorp defendants' application for worldwide anti-suit and anti-enforcement injunctions against Fiorilla.

14

F.      *Defendants' Motion for Sanctions*

71.     On August 4, 2017, CGMI, acting primarily through Paul Weiss, filed a motion before Justice Ramos for attorneys' fees and sanctions based on plaintiff Fiorilla's having filed the Rule 5015 Proceeding and for having sought the First French Judgment (the "Sanctions Proceeding").

72.     On August 9, 2018, Justice Ramos, again acting on the basis of defendants' false declarations, affidavits and legal memoranda, granted defendants' motion in its entirety, despite the facts that (A) the First French Judgment was issued and withdrawn prior to Justice Ramos' anti-suit and anti-enforcement injunctions and (B) the First French Exequatur was lawfully issued by a French court pursuant to French law and the New York Convention with CGMI exercising its due process rights under French law and having submitted an appeal.

G.      *Post-Award Litigation in Federal Court*

73.     On April 19, 2017, plaintiff commenced an action in the United States District Court for the Southern District of New York (the "U.S. District Court") for a declaratory judgment holding that Justice Remos' decision and order regarding the existence of a settlement was *ultra vires*, untimely, and preempted by the United States Arbitration Act (the "FAA") (*Fiorilla v. Citigroup Global Markets Inc.*, Case no. 17-cv-5123) (the "Federal Proceeding").

74.     Judge Kevin P. Castel held that the U.S. District Court did not have subject matter jurisdiction to review Justice Ramos' decisions.

75.     On June 27, 2018, the United States Court of Appeals for the Second Circuit (the "U.S. Court of Appeals"), again acting principally on the basis of defendants' false filings, affirmed the U.S. District Court decision (*Fiorilla v. Citigroup Global Markets Inc.*, Case No. 18-2196).

H.    *The Second French Proceeding to Recognize the FINRA Award*

76.    In November 2018, plaintiff Fiorilla submitted a second application to recognize and enforce the FINRA Award before the TGI de Paris (the "Second French Proceeding").

77.    In December 2018, the TGI de Paris again and in proper application of French law and the New York Convention "recognized and enforced the award," and issued the required exequatur (*Tribunal de Grande Instance de Paris, Ordonnance d'Exequatur*, 28 December 2018, Dépot N°18/03344 – the "Second French Exequatur").

78.    CGMI and Mulcahy filed an appeal on May 31, 2019 of the Second French Exequatur issued in December 2018.

79.    Significantly, the Paris Court of Appeal on July 12, 2021 dismissed the appeal of CGMI and Mulcahy against Fiorilla and upheld the Second French Exequatur.  The Court in doing so also ordered CGMI and Mulcahy to pay to Fiorilla the sum of 80,000 Euros under Article 700 of the Code of Civil Procedure for costs of procedure and all other court costs. Defendants have never complied with the order to pay plaintiff Fiorilla.

80.    In its ruling, the Paris Court of Appeal specifically stressed that "*the provisions of French international arbitration law do not provide that the annulment of the award in its country of origin constitutes a ground for refusing recognition and enforcement of the award in France.  Moreover, it is common ground that an international award which is not connected to any State legal system is an international legal decision whose legality is examined in the light of the rules applicable in the country where its recognition and enforcement are sought and not in the light of the rules of the country in which it was made.  Finally, the coexistence of two irreconcilable decisions is precisely in this disputed case and the very existence of a settlement*

*was challenged before the FINRA arbitrators, who found in their 30 July, 2013 award that evidence of a settlement agreement had not been established. Indeed, the arbitrators twice, on 19 June 2012 and 18 March 2013, rejected the request of CGMI and Mr. Mulcahy to recognize the existence of a transaction, denying to the emails or oral exchanges before the arbitrators any character of the 'transaction' equivalent to a court decision.*" *See* Ruling of the Paris Court of Appeal at 7-8 (emphasis supplied).

81. The Paris Court of Appeal also emphasized that "[in] the present case, there is no reason to believe that by making use of the enforcement procedures available under French law, and by invoking the provisions of the New York Convention before the French judge, Mr. Fiorilla has abused his right to sue and to pursue the enforcement of an arbitral award in France, the court being seized only of the present appeal proceedings against the exequatur order of 21 December, 2018, which it is established was not obtained fraudulently or even by surprise since it is established that the second request for exequatur was accompanied by a note explaining the context of this new request and mentioning the previous order obtained. Accordingly, CGMI and Mr. Mulcahy should be [denied] . . . their claim for damages for abuse of process." *Id.*

82. Therefore, the decision of the Paris Court of Appeal dated July 12, 2021 and of the December 28, 2018 second order of TGI de Paris "recognized and enforced the award" based upon French law and the full legal force and effect of the New York Convention. This decision is considered definitive and enforceable under French law and Fiorilla is presently taking steps to enforce the Second French Exequatur in France and elsewhere in the European Union.

83. On July 19, 2021, CGMI and Mulcahy made an extraordinary attack against the ruling of the Paris Court of Appeal dated July 12, 2021 at the level of the Court of cassation, the highest court of the French judicial system, that can only rule on issues of law and has no power

to judge the merits of the case already decided by the Court of Appeal. Under French law this recourse has no suspensive effect on the recognition of the enforceability of the FINRA Award in France or the European Union related to the Second French Exequatur and does not suspend the payment of costs allocated by the Paris Court of Appeal in favor of plaintiff Fiorilla.

I.      *CGMI's Motion for Contempt in the New York Supreme Court*

84.     On March 22, 2019, defendants filed a motion in the New York Supreme Court to hold plaintiff in civil and criminal contempt for daring to collect the FINRA Award with the Second French Exequatur (the "Contempt Proceeding").

85.     CGMI and Paul Weiss sought to have plaintiff fined and imprisoned. Defendants also sought an award of legal fees.

86.     This conduct by defendants is a blatant attempt to harass, extort and intimidate Fiorilla personally notwithstanding the fact that the Second French Exequatur was lawfully issued by a French court pursuant to French law and the New York Convention and as confirmed by the Paris Court of Appeal on July 12, 2021.

J.      *The RICO Conspiracy*

(i)     *Object*

87.     Defendants and their conspirators have fraudulently schemed to use every deceptive and extortionate tactic and trick to avoid paying the arbitral award validly issued by the FINRA Panel.

88.     To this end, defendants devised a strategy to corruptly attempt to obstruct, influence, and impede the proceedings of the New York Supreme Court in the Vacatur Proceeding and thereafter the proceedings of the Appellate Division, the New York Court of Appeals, the U.S. District Court, and the U.S. Court of Appeals.

89.     In addition, through intimidation and harassment in the United States with sanction and contempt proceedings, defendants intentionally misled multiple United States courts about trust rights, the right of recognition of the FINRA Award and other matters under French law as well as intentionally misleading French courts as to who what in fact had occurred in the United States.

90.     Upon information and belief, before filing the petition to vacate the FINRA Award, Citigroup, CGMI, Klayman & Toskes, Klayman, Bressler Amery and Paul Weiss discussed the FINRA Arbitration proceedings and deceptive tactics to deprive plaintiff of his rights.

91.     Moreover, upon information and belief, before moving for the anti-suit and anti-enforcement injunctions and opposing the Rule 5015 Proceeding, Citigroup, CGMI, Paul Weiss, and Allen & Overy discussed the prior FINRA Arbitration proceedings and the Vacatur Proceeding in order to consire and devise tactics to deprive Fiorilla of his rights.

92.     Citigroup, CGMI, Paul Weiss and the other defendants conspired to and engaged in a pattern of false statements, declarations and filings under oath so as to obstruct and influence each of the Vacatur Proceeding, the Rule 5015 Proceeding, the Sanctions Proceeding, the federal proceedings, the Contempt Proceeding as well as the First French Proceeding and Second French Proceeding, all for the purpose of inflicting substantial economic injury and loss on plaintiff.

93.     Upon information and belief, defendants Citicorp and its affiliates, Paul Weiss, and each of the other defendants knowingly conspired and agreed with each other to commit offenses against plaintiff, the United States and the State of New York, by, among other things, (i) making materially false declarations under oath before the U.S. District Court and the U.S. Court

19

of Appeals, in violation of Title 18, United States Code, Section 1623(a); and (ii) obstructing, corruptly influencing and impeding an official proceeding in violation of Title 18, United States Code, Section 1512(c)(2).

94. Defendants and their co-conspirators ultimately succeeded in convincing the New York Supreme Court that the there was a settlement of the arbitration claims based on a "judicial decision" that never existed outside of the delusionary realm of their scheme to defraud. Indeed, defendants' constantly repeated assertion that the dispute with Fiorilla had been settled and resolved was and continues to be a blatant falsehood.

*(ii)*    *Manner and Means*

95. It was a part of the scheme and conspiracy that each of the defendants made or caused to be made, or advocated materially false representations and lies to the various tribunals that:

> (A)    The matter of the arbitration had been settled in all material aspects prior to the FINRA Award; and
>
> (B)    There had been a decision by a Florida court that the case had been settled.

96. It was an essential part of the scheme and conspiracy that each of the defendants, including but not limited to Citigroup, CGMI and Paul Weiss, prepared and caused to be prepared false and fraudulent Court filings.

97. Citigroup, Paul Weiss and the other defendants knew that these filings contained materially false information and lies.

98.     Defendants repeatedly used interstate wire transmissions, including telephone, email, facsimile, text messages and the Internet to transmit the false, incomplete, and misleading information to further the commission of the racketeering offenses.

K.     *Predicate Acts*

(i)     *Harper's False Testimony Before the State Supreme Court*

99.     As previously alleged, on December 17, 2013, at a hearing in the New York Supreme Court, defendant Harper, a Paul Weiss partner, perjured himself:

> THE COURT:  Was there an adjudication in the Florida Court?
> MR. HARPER:  Yes.
> THE COURT:  And that was?
> MR. HARPER:  That the case had been settled.
> THE COURT:  The petition is granted in all respects.  Thank you very much.  The decision is on the record.  Take your appeal.  Don't waste my time with this.
> [*See* Transcript, Hearing before Justice Ramos, December 17, 2013, page 21.]

(ii)    *False and Misleading Representations Before the State and Federal Courts Regarding the Alleged Settlement*

100.    Defendants furthered their scheme to defraud and other predicate acts through intentional misrepresentations and lies to the New York Supreme Court, the Appellate Division and the New York Court of Appeals. In particular:

*New York Supreme Court*

(A)     On page 10 of the *Memorandum of Law in Support of Petition to Vacate*, defendants Paul Weiss and Harper falsely stated that "the Florida Bar adjudged that the parties had indeed settled the Arbitration" when, in fact, there was no such adjudication.

(B)     On page 2 of the *Reply Memorandum of Law in Support of Petition to Vacate*, defendants Paul Weiss and Harper falsely stated that the FINRA Panel "entered an Award in a dispute . . . which a Florida tribunal later found as fact

in a proceeding the Respondent started. . . ." when in fact no Florida tribunal made any findings of fact.

*Appellate Division*

(A) "[A] Florida disciplinary body later determined, on a complaint that the arbitral claimant had commenced, that the parties had settled." This fraudulent falsehood was contained in the *Brief for Petitioners-Respondents*.

(B) "The Florida Bar so concluded. . . ." when in fact there was no such conclusion. This fraudulent falsehood was contained in the *Brief for Petitioners-Respondents*, page 2.

(C) "[An] adjunct of the Florida courts determined the question presented." This fraudulent falsehood was contained in the *Brief for Petitioners-Respondents*, page 17.

(D) "[The] action of the Florida Bar collaterally estopped Respondent or operated as res judicata." This fraudulent falsehood was contained in the *Brief for Petitioners-Respondents*, page 40.

(E) "[A] disinterested body . . . confirmed what the written communications to FINRA said . . . that the parties had settled 'in full.'" This fraudulent falsehood was contained in the *Brief for Petitioners-Respondents*, page 40.

*Court of Appeals*

(A) "[The] Florida Bar, citing documented facts establishing that Respondent had explicitly authorized his lawyer to settle." This fraudulent falsehood was contained in the *Brief for Petitioners in Opposition to Respondent's Motion for Leave to Appeal to the Court of Appeals*, page 4.

(B) "The Florida Bar dismissed Respondent's complaint." This fraudulent falsehood was contained in the *Brief for Petitioners in Opposition to Respondent's Motion for Leave to Appeal to the Court of Appeals*, page 20.

(C) "[The] Florida Bar concluded." This fraudulent falsehood was contained in the *Brief for Petitioners in Opposition to Respondent's Motion for Leave to Appeal to the Court of Appeals*, page 20.

(D) "Also compelling are the findings of the Florida Bar." This fraudulent falsehood was contained in the *Brief for Petitioners in Opposition to Respondent's Motion for Leave to Appeal to the Court of Appeals*, page 32.

101. As part of their scheme to defraud and extort plaintiff, defendants Paul Weiss and Soloway advanced baseless claims against plaintiff in the Sanctions Proceeding and the Contempt Proceeding.

102. Defendants then used the results of these flawed proceedings which they intentionally corrupted to attempt to influence and obstruct the French proceedings regarding the recognition and enforcement of the FINRA Award.

103. Moreover, defendants have conspired to manufacture a wave of criticism of plaintiff based on deliberate falsehoods and misleading statements. Such attacks were intended to damage the credibility of Fiorilla in his proper exercise of his rights outside of the United States and notwithtanding his compliance with other relevant court orders related to claims by Citibank.

104. Defendant Paul Weiss's deliberate misrepresentations to the courts have not been limited to Harper's false testimony and defendant Soloway's false statements. In addition, and as part of their scheme to obstruct, influence and impede the Vacatur Proceeding and the subsequent proceedings, Paul Weiss and its attorneys continued to spread repeatedly their false

23

version of events by intentionally submitting, among other things, the following documents containing material misrepresentations:

*New York State Courts*

(A)  Petition to Vacate Arbitration Award, filed on August 28, 2013 and signed by Paul Weiss and Harper (court document 1);

(B)  Memorandum of Law in Support of Petition to Vacate, filed on August 29, 2013, and signed by Paul Weiss, Harper and other Paul Weiss attorneys (court document 26);

(C)  Reply Memorandum of Law in Support of Petition to Vacate, filed on October 2, 2013, and signed by Paul Weiss, Harper and other Paul Weiss attorneys (court document 54);

(D)  Reply Affirmation in Support of Petition to Vacate Arbitration Award, filed on October 2, 2013, and signed by Harper (court document 55);

(E)  Letter to Justice Ramos respecting the Application to Vacate an Arbitration Award, filed on December 12, 2013, and signed by Harper (court document 67);

(F)  Order to Show Cause and Temporary Restraining Order, filed on September 18, 2016, and signed by Soloway (court document 130);

(G)  Memorandum of Law in Support of CGMI's Application for a Temporary Restraining Order and Order to Show Cause for a Preliminary Injunction, filed on September 18, 2016, and signed by Soloway and other Paul Weiss attorneys (court document 131);

(H) Affirmation of Soloway in Support of CGMI's Application, filed on September 18, 2016, and signed by Soloway (court document 132);

(I) Proposed Order Entering Preliminary Injunction, filed on September 18, 2016, by defendant Soloway (court document 146);

(J) Memorandum of Law in Opposition to Respondent's Motion to Vacate the Court's Prior Judgment, filed on October 5, 2016, and signed by defendants Soloway, Harper, and other Paul Weiss attorneys (court document 157);

(K) Affirmation of Jeffrey Newton in Opposition to Respondent's Motion to Vacate the Court's Prior Judgment, filed on October 5, 2016, and signed by Paul Weiss (court document 158);

(L) Memorandum of Law in Support of Motion for Sanctions and Attorneys' Fees, filed on August 4, 2017, and signed by defendant Soloway (court document 183);

(M) Affirmation of Soloway, filed on August 4, 2017, and signed by defendant Soloway (court document 184);

(N) Affirmation of Harper, filed on August 4, 2017, and signed by defendant Harper (court document 192);

(O) Reply Memorandum of Law in Further Support of Petitioners' Motion for Sanctions and Attorneys' Fees, filed on September 22, 2017, and signed by defendant Soloway (court document 217);

(P) Affirmation of Soloway in Further Support of Petitioners' Motion for Sanctions and Attorneys' Fees, filed on September 22, 2017, and signed by Soloway (court document 218);

(Q)   Letter to Justice Ramos respecting Respondent's Notice of Resettlement, filed on September 4, 2018, and signed by Soloway (court document 235);

(R)   Order to Show Cause Why Respondent Should Not Be Held in Contempt for Violating Court Order and Temporary Restraining Order, filed on April 22, 2019, and signed by Soloway (court document 237);

(S)   Memorandum of Law in Support of Petitioners' Order to Show Cause Why Respondent Should Not Be Held in Contempt of Court and Application for a Temporary Restraining Order, filed on April 22, 2019, and signed by Soloway (court document 238);

(T)   Affirmation of Soloway In Support of CGMI's Motion for an Order to Show Cause, filed on April 22, 2019, and signed by Soloway (court document 239);

(U)   Reply Memorandum of Law in Further Support of CGMI's Motion, filed on May 16, 2019, and signed by Soloway (court document 259); and

(V)   Affirmation of Teuta Fani in Support of CGMI's Motion, filed on May 16, 2019, and signed by Fani (court document 260).

*U.S. District Court*

(A)   Letter addressed to Judge P. Kevin Castel, filed on August 28, 2017, and signed by Soloway (court document 11);

(B)   Motion to Dismiss the Amended Complaint, filed on September 22, 2017, and signed by defendant Soloway (court document 16);

(C)   Memorandum of Law in Support of the Motion to Dismiss the Amended Complaint, filed on September 22, 2017, and signed by defendant Soloway (court document 17);

26

(D)  Declaration of Stephen B. Popernik ("Popernik") in Support the Motion to Dismiss the Amended Complaint, filed on September 22, 2017, and signed by Popernik (court document 18);

(E)  Motion to Dismiss the Second Amended Complaint, filed on November 3, 2017, and signed by defendant Soloway (court document 27);

(F)  Memorandum of Law in Support the Motion to Dismiss the Second Amended Complaint, filed on November 3, 2017, and signed by defendant Soloway (court document 28);

(G)  Declaration of Popernik in Support the Motion to Dismiss the Second Amended Complaint, filed on November 3, 2017, and signed Popernik (court document 29); and

(H)  Reply Memorandum of Law in Support the Motion to Dismiss the Second Amended Complaint, filed on January 12, 2018, and signed by defendant Soloway (court document 36).

*U.S. Court of Appeals*

(A)  Brief on behalf of CGMI, filed on July 26, 2018, and signed by Soloway (court document 49); and

(B)  Supplemental Appendix on behalf of CGMI, filed on July 26, 2018, and signed by Soloway (court document 50).

L.     *Allen & Overy*

105.    In an email dated September 20, 2017, a partner of Allen & Overy made numerous false statements respecting the First French Proceeding with full knowledge that the

email was to be submitted to the New York Supreme Court in connection with the Sanctions Proceeding.

106.    In a letter to Lazareff Le Bars SARL dated April 19, 2019, and submitted to the New York Supreme Court, Allen & Overy falsely stated that, pursuant to Justice Ramos' anti-enforcement injunction, plaintiff "waived his rights under the FINRA award."  This statement was false and in fact was found to be false by the French court.

107.    Allen & Overy made other misrepresentations through Paul Weiss to the New York courts.

M.    *Citigroup and CGMI*

108.    Defendants CGMI and Citigroup have committed each of the offenses listed in this Complaint through the actions of their agents and attorneys.

N.    *Paul Weiss's Intimidation Tactics*

(i)    *State Sanctions Motion*

109.    On August 4, 2017, Paul Weiss filed a motion in the Sanctions Proceeding.

110.    Paul Weiss knew or should have known that no statutory authority existed for the type of relief sought.

111.    The motion was made to intimidate and extort plaintiff into not pursuing collection of the FINRA Award in the United States, in France or in any court of competent jurisdiction.

(ii)    *Intimidation of Plaintiff's Counsel Robert de By*

112.    On September 8, 2018, Soloway wrote an email to Robert de By of Connon Wood LLP, plaintiff's counsel in the Sanctions Proceeding, that was completely without merit in

law and could not be supported by a reasonable argument for an extension, modification or reversal of existing law.  The email was an act of extortion.

113.    Again, Paul Weiss and Soloway knew or should have known that no statutory authority existed for the accusations made.

114.    The email was undertaken primarily to harass, intimidate and extort plaintiff and his counsel.

(iii)    *Intimidation of Plaintiff's Counsel Eric Jaso*

115.    In a telephone conversation on September 5, 2018, to Eric H. Jaso ("Jaso") of Spiro Harrison, Soloway threatened to file a sanctions motion before Judge Castel in the U.S. District Court if plaintiff pursued an appeal of Judge Castel's ruling. *See* email of that date from Jaso to plaintiff.

116.    Soloway knew that plaintiff had a right to appeal Judge Castel's ruling under 28 U.S.C. § 1291.

117.    Yet again, Paul Weiss and Soloway knew or should have known that no statutory authority existed for the threats made – Soloway's email was undertaken to harass, intimidate and extort plaintiff and his counsel into not pursuing an appeal of the ruling.

(iv)    *Intimidation of Plaintiff's Counsel Bernard Kleinman*

118.    By letter dated July 12, 2019 to plaintiff's counsel, Bernard Kleinman, Soloway intended to harass and intimidate plaintiff and his counsel into withdrawing the Ordonnance d'Exequatur.  This conduct, too, was criminally extortionate conduct.

## Overview of the Application of RICO

119.    Defendants have violated two sections of the RICO statute.  The first, 18 U.S.C. § 1962(c), makes it unlawful "for any person employed by or associated with any enterprise

engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." The second, 18 U.S.C. § 1962(d), prohibits "any person" from "conspir[ing] to violate" the preceding section.

120. The Supreme Court has made it clear that RICO applies "not just [to] mobsters" but to "any person" who violates its provisions. The statute, moreover, is intended "to be read broadly," in accordance with "Congress' self-consciously expansive language and overall approach," as "an aggressive initiative to supplement old remedies and develop new methods for fighting crime," regardless of whether the defendant is associated with organized crime or a "respected business." *Sedima S.P.R.L.* v. *Imrex Co.*, 473 U.S. 479, 495 (1985).

121. Given this clear background, the RICO claims against the defendants are entirely appropriate. The RICO question is whether all of the statutory requirements are satisfied with respect to each defendant, not whether the defendant fits a particular popular stereotype of a "legitimate" business.

122. Finally, 18 U.S.C. § 1964(c) creates a private right of action for any person injured in his business or property by a violation of the statute to recover, *inter alia*, treble damages and attorneys' fees.

123. The Supreme Court repeatedly has rejected efforts to curtail the scope of civil RICO actions where courts ignore Congress's insistence that the statute be "liberally construed to effectuate its remedial purposes." *Id.* at 496.

### *Claims for Relief*

### **Count I**
(Violations of RICO, 18 U.S.C. § 1962(c))

124.   Plaintiff realleges and incorporates herein by reference each and every foregoing paragraph of this Complaint as if set forth in full.

125.   At all relevant times, plaintiff Fiorilla is a person within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

126.   At all relevant times, each defendant is a person within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

#### *A.    The Elements of a Section 1962(c) Violation*

127.   "A violation of § 1962(c) . . . requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Id.* at 496.

128.   Here, the alleged enterprise in substance is the legal team assembled by Citigroup and CGMI and its associated persons (the "Obstruction Enterprise") – an enterprise over which Citigroup, CGMI, the other Citicorp defendants, and the Paul Weiss attorneys presided and which they conducted and controlled.

129.   The alleged pattern of racketeering activity by which Citigroup, CGMI and Paul Weiss, and others conducted the affairs of that enterprise includes the wrongful, improper, and illegal actions identified in this Complaint.

#### *B.    The Enterprise*

130.   Section 1961(4) defines "enterprise" to "include[] . . . any union or group of individuals associated in fact although not a legal entity." An enterprise may consist of "a group of persons associated together for a common purpose of engaging in a course of conduct," the existence of which is proven "by evidence of an ongoing organization, formal or informal, and by

evidence that the various associates function as a continuing unit." *United States* v. *Turkette*, 452 U.S. 576, 583 (1981). An enterprise need not have a hierarchical structure or a chain of command, and decisions may be made on an *ad hoc* basis and by any number of methods.

131.    In this case, defendants and their conspirators are a group of persons associated together in fact for the common purpose of conducting and carrying out an ongoing criminal enterprise, as described in this Complaint—namely, obstructing, influencing, and impeding various judicial proceedings so as to avoid the Citicorp defendants' paying an arbitral award validly issued by the FINRA Panel coupled with the exertion of pressure through intimidation and extortion of plaintiff not to pursue collection of the FINRA Award anywhere in the world.

## C.    *The Conduct*

132.    Defendants and their conspirators have organized their operation into a cohesive group with specific and assigned responsibilities and a command structure, operating in the United States and France, funded primarily by Citigroup and CGMI from the United States, and directed by Citigroup, CGMI and Paul Weiss from the United States. Over the years they have adapted their scheme to defraud to changing circumstances, recruiting new members to their operation, and expanded the scope and nature of their activities. While the organization of the criminal enterprise has changed over time, and its members may have held different roles at different times, the criminal enterprise has generally been structured to operate as a unit in order to accomplish the goals of their criminal scheme:

> (A)   Defendants CGMI, Paul Weiss, Harper and Soloway have been responsible for oversight of the scheme to obstruct justice and defraud and extort the plaintiff, and have directed other defendants and conspirators to take actions

32

necessary to accomplish the overall aims of the criminal enterprise — namely, manufacturing false testimony that the matter of the Arbitration had been settled in all material aspects prior to the FINRA Award and that there had been a decision by a Florida court that the case had been settled, conducting a massive pressure and intimidation campaign designed to spread false and misleading information about the plaintiff and the FINRA Arbitration, and obstructing the judicial processes of various courts by submitting perjured testimony and misleading pleadings.

(B)   Defendant Allen & Overy and its attorneys have been primarily responsible for prosecuting the sham proceedings in the French courts and have planned and coordinated the presentation of false descriptions of the French proceedings to the U.S. Courts under the direction of the Paul Weiss attorneys.

(C)   Defendant Citicorp and its affiliates have provided funding and otherwise furthered the criminal enterprise.

133.   Defendants and their conspirators constitute an association-in-fact enterprise identified as the Obstruction Enterprise within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c).  Each of the defendants participated in the operation, management and conduct of the Obstruction Enterprise.

134.   At all relevant times, the Obstruction Enterprise was engaged in, and its activities affected, interstate and foreign commerce within the meaning of 18 U.S.C. § 1962(c).

### D.     The Pattern of Racketeering Activity

135.     Defendants conducted or participated, directly or indirectly, in the conduct, management, or operation of the Obstruction Enterprise's affairs through a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5) and in violation of 18 U.S.C. § 1962(c):

### (1)     Obstruction of Justice in Violation of 18 U.S.C. § 1503

136.     Faced with two implacable rejections by the FINRA Panel of the false argument that the Arbitration had been settled, defendants turned to the New York Supreme Court to advance their deceptive scheme. Their baseless position would have been thwarted there as well given both the facts and the law of the case. Defendants, therefore, devised a scheme to defraud the court with respect to those facts.

137.     In a concerted effort to thwart the state and federal court proceedings, defendants, and their affiliates and co-conspirators, habitually filed or caused to be filed documents, including declarations sworn to under penalty of perjury, that falsely represented alleged prior judicial proceedings that in reality never took place. By making these deliberate and strategic false representations in various pending state, federal and foreign judicial proceedings, with full awareness of their consequence and with the specific intent to corruptly endeavor to influence, obstruct, and impede the due administration of justice, defendants have committed multiple instances of obstruction of justice in violation of 18 U.S.C. § 1503.

### (2)     False Declarations in Violation of 18 U.S.C. § 1623

138.     Defendants and their counsel knowingly and repeatedly made false material declarations and made submissions to the various courts knowing the declarations and submissions contained false material declarations. By making these deliberate and material false representations in various pending state, federal and foreign judicial proceedings, with full

34

awareness of their consequence and with the specific intent to corruptly endeavor to influence, obstruct, and impede the due administration of justice, defendants have committed multiple instances of obstruction of justice in violation of 18 U.S.C. § 1623.

### (3)   Honest Services Fraud in Violation of 18 U.S.C. § 1346

139.   By depriving plaintiff of his right to the honest services of the New York state and federal judiciary through defendants' scheme of false testimony and submissions, defendants have committed multiple instances of honest services fraud in violation of 18 U.S.C. § 1346.

### (4)   Deceit on the Court in Violation of New York Judiciary Law § 487

140.   New York Judiciary Law § 487 provides, in pertinent part, as follows: "An attorney or counselor who ... [i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party ... [i]s guilty of a misdemeanor, and in addition to the punishment prescribed therefor by the penal law, he forfeits to the party injured treble damages, to be recovered in a civil action."

141.   As previously described, Paul Weiss, Harper, Soloway and other Paul Weiss attorneys engaged in an intentional pattern of collusion, wrongdoing, and deceit with the intent to deceive multiple state and federal courts, including the United States District Court for the Southern District of New York and the United States Court of Appeals for the Second Circuit. Paul Weiss, the Paul Weiss attorneys and others actively participated in the preparation and filing of multiple court submissions to the New York Supreme Court, the Appellate Division, the Court of Appeals, the United States District Court for the Southern District on New York, and the United States Court of Appeals for the Second Circuit, which included false and misleading statements about the FINRA Arbitration and the lack of prior judicial proceedings.   Defendants Paul Weiss

and the Paul Weiss attorneys knowingly caused these misstatements to be filed with the intent of deceiving the respective courts.

142.     These misstatements were filed in connection with the Vacatur Proceedings and the subsequent related court filings. Paul Weiss, Harper, Soloway and the Paul Weiss attorneys gave false testimony and submitted knowingly false documents to the courts in furtherance of the enterprise's underlying scheme, knowing that without such misrepresentations and falsifications, the defendants' claims would have been barred by the Federal Arbitration Act and the terms of the Arbitration.  By not disclosing to the New York Supreme Court and other courts the truth about the lack of judicial proceedings prior to the FINRA Arbitration and by not disclosing to the courts that the very issue the defendants raised in the Vacatur Proceeding had been twice adjudicated by the FINRA Panel, defendants knowingly engaged in fraud with the intent to deceive the New York Supreme Court, the Appellate Division, the Court of Appeals, the U.S. District Court, the Court of Appeals for the Second Circuit and the French courts.

143.     As a result of the deceitful and fraudulent conduct by Paul Weiss and the Paul Weiss attorneys, plaintiff has been injured in an amount to be established at trial substantially in excess of the existing FINRA Award. By making these deliberate and grossly misleading false representations in various pending state, federal and foreign judicial proceedings, with full awareness of their consequences and with the specific intent to corruptly endeavor to influence, obstruct, and impede the due administration of justice, defendants have committed multiple instances of obstruction of justice in violation of New York Judiciary Law § 487.

### (5)     *Extortion in Violation of New York Penal Law*

144.     Defendants have engineered a wide-ranging campaign of judicial attacks based on false and misleading statements, trumped-up charges, threatened baseless motions and

ongoing harassment, and have demanded plaintiff Fiorilla drop any claim to the FINRA Award, all with the intent and effect of causing a reasonable fear of devastating economic loss on the part of the plaintiff.

145.    Defendants manufactured false evidence against plaintiff and are relying on that false evidence in the various proceedings with the intent and effect of causing a reasonable fear of economic loss on the part of plaintiff Fiorilla.

146.    As described in this Complaint, the defendants conspired with each other to advance baseless claims against plaintiff.

147.    Defendants' actions are intended to induce fear in plaintiff that the defendants will, among other things, continue to pursue a scheme of misrepresentation to the great harm of plaintiff, unless and until plaintiff foregoes any claim to the FINRA Award.

148.    These actions have created a reasonable fear of harm on the part of plaintiff, including fear of economic loss.

149.    Defendants' wrongful and extortionate acts to appropriate plaintiff's property by instilling fear that if collection of the FINRA Award is pursued, defendants would perform an act calculated to harm plaintiff materially with respect to his financial position and reputation in violation of New York Penal Law§§ 110.00, 155.05(2)(e), 155.42.

*(6)    Mail Fraud and Wire Fraud in Violation of 18 U.S.C. §§ 1341, 1343*

150.    As described in this Complaint, defendants engaged in a wide-ranging scheme or artifice to defraud the plaintiff and various courts of law concerning whether the Arbitration had been settled and whether a Florida court had so adjudicated by making false representations in fraudulent pleadings.

151.    The ultimate objective of defendants' scheme or artifice to defraud is to defraud the plaintiff and obstruct the judicial process so as to directly benefit the individual and organizational defendants.

152.    In furtherance of their scheme, defendants transmitted, or caused to be transmitted, by means of wire communication in interstate or foreign commerce, writings, signs, signals, pictures, and sounds, and also caused matters and things to be placed in any post office or authorized depository, or deposited or caused to be deposited matters or things to be sent or delivered by a private or commercial interstate carrier, including, but not limited to, the following:

(i)    emails incorporating false and misleading statements regarding the Arbitration and the alleged existence of an adjudication by a Florida court;

(ii)    wirings and/or mailings between and among the defendants concerning the preparation of court filings and testimony;

(iii)    communications directed toward U.S. state and federal courts and French courts incorporating false and misleading statements regarding the Arbitration and the putative existence of an adjudication by a Florida court;

(iv)    funds transferred by Citigroup and/or CGMI to certain of the defendants, with the intent that those funds be used to promote the carrying on of the defendants' criminal activities; and

(v)    electronic filing and service of court papers containing false and misleading statements intended to impede the operation of those courts.

153.    Defendants participated in the scheme or artifice knowingly, willfully, and with the specific intent to obstruct, influence and impede the proceedings of various state, federal and foreign courts and defraud the plaintiff.

154.     Defendants knowingly and intentionally prepared court papers, filings and testimony, which statements and filings the defendants knew to be false or misleading, to be disseminated to multiple state, federal and foreign courts, with the intent that those statements be believed and that they form the basis for a vacatur of the FINRA Award, as well as for the Federal Proceeding, the Sanctions Proceeding, the Contempt Proceeding and the French proceedings.

155.     Defendants knowingly engaged in conduct with the intent to generate fear in the plaintiff such that the plaintiff should drop any claim to the FINRA Award and the French judgments and that if he did not comply with defendants' extortionate demands he would be subject to various penalties, including imprisonment.

156.     Defendants' false and misleading statements and filings have been relied on by U.S. and French courts.  Defendants' false and misleading statements have caused plaintiff substantial damages.

### (7)     *Money Laundering in Violation of 18 U.S.C. § 1956(a)(2)(A)*

157.     Defendants Citigroup and/or CGMI have on multiple occasions, acting in their individual capacities and/or as agents for CGMI, knowingly caused the transportation, transmission, and/or transfer of funds to or from the United States to Paul Weiss and other entities with the intent that those funds be used to promote the carrying on of unlawful activity in violation of 18 U.S.C. §§ 1341, 1343 and 1951, including the false and misleading filings made in the U.S. and French courts and the funding of the defendants' pressure and extortion campaigns against the plaintiff.

158.     Defendants Citigroup and/or CGMI and Paul Weiss on multiple occasions have knowingly caused the transportation, transmission, and/or transfer of funds to or from the United States to Allen & Overy and other entities with the intent that those funds be used to

promote the carrying on of unlawful activity in violation of 18 U.S.C. §§ 1341, 1343 and 1951, including the false and misleading filings made in the U.S. and French courts and the funding of the defendants' extortionate campaign against the plaintiff.

159.   Defendants on multiple occasions, acting in their individual capacities and/or as agents for CGMI, have knowingly caused the transportation, transmission, and/or transfer of funds to or from the United States to Bressler Amery and other entities with the intent that those funds be used to promote the carrying on of unlawful activity in violation of 18 U.S.C. §§ 1341, 1343 and 1951, including the false and misleading filings made in the U.S. and French courts and the funding of the defendants' extortionate campaign against the plaintiff.

### (8)   Conspiracy against Civil Rights in Violation of 18 U.S.C. § 241

160.   Defendants Paul Weiss and Soloway used threats and intimidation to instill fear into plaintiff Fiorilla that he not pursue the FINRA Award through the U.S. and foreign courts.

161.   No statutory authority existed for the threats made apart from attempting to intimidate and extort the plaintiff.

162.   Defendants, by use of such threats and intimidation, have committed multiple instances of conspiracy against the plaintiff's civil rights in violation of 18 U.S.C. § 241.

### (9)   Use of Interstate and Foreign Commerce in Violation of the Travel Act

163.   Defendants committed acts constituting indictable offenses under 18 U.S.C. § 1952 in that, having devised a scheme or artifice to defraud the courts through false or fraudulent pretenses, representations and testimony, defendants then traveled in interstate and foreign commerce and used facilities of interstate and foreign commerce in order to promote, manage and facilitate the continuation of their scheme.

**(10)    *Violations of 18 U.S.C. §1512.***

164.    By the acts identified earlier in this Complaint, defendants have systematically and continuously violated the provisions of 18 U.S.C. §1512 relating to harassment in connection with judicial proceedings.

<u>**Count II**</u>
(Violations of RICO, 18 U.S.C. § 1962(d))

165.    Plaintiff realleges and incorporates herein by reference each and every foregoing paragraph of this Complaint as if set forth in full.

166.    Defendants have unlawfully, knowingly and willfully combined, conspired, confederated and agreed together and with others to violate 18 U.S.C. § 1962(c), in violation of 18 U.S.C. § 1962(d).

167.    Upon information and belief, defendants knew that they were engaged in a conspiracy to commit the predicate acts, and they knew that the predicate acts were part of such racketeering activity, and the participation and agreement of each of them was necessary to allow the commission of this pattern of racketeering activity.  This conduct constitutes a conspiracy to violate 18 U.S.C. § 1962(c), in violation of 18 U .S.C. § 1962(d).

168.    Upon information and belief, defendants agreed to conduct or participate, directly or indirectly, in the conduct, management, or operation of the Enterprise's affairs through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

169.    Each defendant knew about and agreed to facilitate the Enterprise's scheme to obtain property from the plaintiff.  It was part of the conspiracy that the defendants and their conspirators would commit a pattern of racketeering activity in the conduct of the affairs of the Enterprise, including the acts of racketeering set forth in this Complaint.

170. As a direct and proximate result of defendants' conspiracy, the acts of racketeering activity of the Enterprise, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962(d), the plaintiff has been injured in his business and property, including the attorneys' fees and costs to defend himself in objectively baseless, improperly motivated litigation in respect of the FINRA Award and related litigation in the U.S. and France, including the attorneys' fees and costs associated with exposing the defendants' scheme.

171. Pursuant to 18 U.S.C. § 1964(c), plaintiff Fiorilla is entitled to recover treble damages plus costs and attorneys' fees from the defendants.

### Count III
(Fraud)

172. Plaintiff realleges and incorporates herein by reference each and every foregoing paragraph of this Complaint as if set forth in full.

173. Defendants and their agents have knowingly misrepresented, omitted, and/or concealed material facts in their pleadings and representations before New York State and U.S. courts respecting whether the matter of the Arbitration had been settled in all material aspects prior to the FINRA Award and whether there had been a decision by a Florida court that the case had been settled.

174. These false representations are detailed throughout this Complaint and include false testimony before the New York Supreme Court, the Court of Appeals and U.S. District Court.

175. Defendants made these false representations while knowing that their misrepresentations were materially false and/or that their omissions were material.

176. Defendants further made these misrepresentations and/or omissions with the intent of obtaining favorable rulings in the Vacatur Proceeding and subsequent litigation.

42

177.    These material misrepresentations and/or omissions — although they are false and baseless — have been relied upon by New York State courts and the U.S. courts.

178.    As a direct, proximate, and foreseeable result of defendants' fraud, the plaintiff has been harmed, including significant pecuniary, reputational, and other damages. These injuries include significant damage to the plaintiff's reputation, and the attorneys' fees and costs to defend himself in objectively baseless, improperly motivated litigation and in related litigation, including the attorneys' fees and costs associated with exposing the defendants' scheme.

179.    Defendants have engaged in the malicious, willful, and fraudulent commission of wrongful acts and, because of the reprehensible and outrageous nature of these acts, the plaintiff is entitled to, and should be awarded, compensatory damages against each of the defendants.

### Count IV
(Violations of New York Judiciary Law § 487)

180.    Plaintiff realleges and incorporates herein by reference each and every foregoing paragraph of this Complaint as if set forth in full.

181.    New York Judiciary Law § 487 provides, in pertinent part, as follows: "An attorney or counselor who . . . [i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party . . . [i]s guilty of a misdemeanor, and in addition to the punishment prescribed therefore by the penal law, he forfeits to the party injured treble damages, to be recovered in a civil action."

182.    As set forth above, defendants Bressler Amery, Klayman & Toskes, Paul Weiss, Allen & Overy, Soloway, and Klayman engaged in an intentional pattern of collusion, wrongdoing, and deceit with the intent to deceive both the plaintiff and multiple state and federal courts, including the U.S. District Court and the U.S. Court of Appeals.

183.   Each of the defendants actively participated in the preparation and filing of multiple court submissions to the various courts, which included false and misleading statements respecting whether the Arbitration had been settled and whether a prior tribunal had so adjudicated the issue.   Defendants knowingly caused these misstatements to be filed with the intent of deceiving the courts and the plaintiff.

184.   As a result of the deceitful and fraudulent conduct of defendants Bressler Amery, Klayman & Toskes, Paul Weiss, Allen & Overy, Harper, Soloway, and Klayman, the plaintiff has been injured in an amount to be established at trial.

185.   By reason of the foregoing, the plaintiff is entitled to monetary damages against defendants Bressler Amery, Klayman & Toskes, Paul Weiss, Allen & Overy, Harper, Soloway, and Klayman, plus treble damages and reasonable attorneys' fees pursuant to Judiciary Law § 487.

### Count V
(Civil Conspiracy)

186.   Plaintiff realleges and incorporates herein by reference each and every foregoing paragraph of this Complaint as if set forth in full.

187.   As set forth above, defendants have committed torts against the plaintiff, including acts of racketeering giving rise to violations of RICO, fraud, and unjust enrichment.

188.   Defendants agreed to participate in a common scheme against the plaintiff. Defendants intentionally participated in the furtherance of a plan or purpose to obtain property from plaintiff.   In furtherance of this plan or purpose, the defendants committed overt and unlawful acts, including acts of racketeering.

189.    As a direct and proximate result of the defendants' conspiracy, the overt acts committed in furtherance of that conspiracy, and the torts committed against the plaintiff, the plaintiff has been damaged.

190.    Defendants have engaged in the malicious, willful, and fraudulent commission of wrongful acts and, because of the reprehensible and outrageous nature of these acts, plaintiff is entitled to, and should be awarded, compensatory damages against each of the defendants.

<u>**Count VI**</u><br>(Unjust Enrichment)

191.    Plaintiff realleges and incorporates herein by reference each and every foregoing paragraph of this Complaint as if set forth in full.

192.    Defendants Citigroup and CGMI have sought to avoid paying the FINRA Award to the plaintiff through a fraudulent judgment in the Vacatur Proceeding.  Defendants Citigroup and CGMI have been and will continue to be unjustly enriched by benefits obtained due to the fraudulent judgment in the Vacatur Proceeding.

193.    Any property that defendants Citigroup and CGMI obtain from the plaintiff will be acquired as a result of defendants' tortious, illegal, and fraudulent conduct, as set forth herein, including the Vacatur Proceeding itself.

**PRAYER FOR RELIEF**

**On the First and Second Claims for Relief:**

1.    For general damages according to proof at trial, trebled according to statute, 18 U.S.C. § 1964(c);

2.    For prejudgment interest according to statute; and

45

3.      For the plaintiff's reasonable attorneys' fees and costs according to statute,

18 U.S.C. § 1964(c); and

4.      For treble damages on the counts arising under RICO.

**On the First through Sixth Claims for Relief:**

5.      For general damages according to proof at trial, trebled according to statute,

New York Judiciary Law §487, and

6.      For the plaintiff's reasonable attorneys' fees and costs according to statute,

New York Judiciary Laws §487.

**As to All Causes of Action:**

7.      For damages in an amount to be determined at trial but believed to exceed

$100 million.

8.      For such other legal and equitable relief as the Court may deem plaintiff is

entitled to receive.

9.      For punitive damages in an amount to be determined by the jury at trial but

believed to exceed $200 million.

DATED:  July 21, 2022

PAUL BATISTA, P.C.

By: _____

Paul Batista
26 Broadway – Suite 1900
New York, New York 10004
telephone:  (917) 397-1815 (office)
telephone:  (631) 377-0111 (cell)
facsimile:  (212) 344-7677
e-mail:  Batista007@aol.com